UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ROSALIE LANCASTER, )<br>)<br>      *Plaintiff* )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>*Acting Commissioner of Social Security*, )<br>)<br>      *Defendant* ) | No. 1:14-cv-283-DBH |

**REPORT AND RECOMMENDED DECISION**[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the basis that the administrative law judge relied on flawed vocational testimony as to the number of jobs available in the national economy. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 11) at 9-10.[2] I find no error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on June 10, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.
[2] At oral argument, the plaintiff's counsel withdrew his client's remaining points of error, challenging the administrative law judge's residual functional capacity ("RFC") and credibility determinations. *See* Statement of Errors at 3-9.

1

fibromyalgia, lower back pain, bilateral leg pain, obesity, and depression, Finding 2, Record at 74; that she had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with the limitations that she could occasionally climb ramps and/or stairs, could never climb ladders, ropes, or scaffolds, could occasionally crawl, stoop, kneel, and crouch, could frequently bilaterally reach, finger, and handle, needed to avoid exposure to extreme cold, humidity, and wetness, required work limited to simple and routine tasks, could not understand, remember, or carry out detailed instructions, and needed to be in a low-stress job, defined as requiring only occasional decision-making and occasional changes in the work setting, Finding 5, *id*. at 76-77; that, considering her age (50 years old, defined as an individual closely approaching advanced age, on her alleged disability onset date, May 13, 2010), education (limited), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 6-9, *id*. at 80; and that she, therefore, had not been disabled from May 13, 2010, through the date of the decision, January 14, 2013, Finding 10, *id*. at 82. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work.  20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

Based on the testimony of a vocational expert, the administrative law judge found the plaintiff capable of performing the representative jobs of cleaner/housekeeping, Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT") § 323.687-014, with 4,980 jobs available in Maine and 877,980 nationally, marker, DOT § 209.587-034, with 7,880 jobs available in Maine and 1,782,800 nationally, and folding machine operator, DOT § 208.685-014, with 290 jobs available in Maine and 115,010 nationally.  *See* Record at 35-36, 81.

On cross-examination by the plaintiff's counsel, the vocational expert testified that her source for those numbers was the Bureau of Labor Statistics and that the numbers provided were not for the specific DOT-coded jobs that she had identified but, rather, for groups of jobs.  *See id*. at 37-38.  For example, she noted, there were 14 jobs in the group that includes folding machine operators, 38 in the group that includes markers, and nine in the group that includes cleaners/housekeeping.  *See id*. at 38.  When asked whether there was "a way that we can get an accurate number as to the incidence of just that specific job within the region or the national economy[,]" she responded, "Not that I know of."  *Id*.  When asked how she could say that those were "accurate representations of the numbers of those jobs available if they are in fact jobs numbers for somewhere between nine and 33 [sic] other jobs[,]" she testified, "The jobs are a

representative sample of jobs in the DOT and the companion occupations." *Id*. at 39 (underline in original).

As the plaintiff points out, *see* Statement of Errors at 10, this court has held similar occupational incidence testimony inadequate to carry the commissioner's burden at Step 5, *see St. Pierre v. Astrue*, No. 1:10-cv-104-JAW, 2010 WL 5465635, at *2-*3 (D. Me. Dec. 29, 2010) (rec. dec., *aff'd* Jan. 19, 2011) (reversing and remanding on basis that vocational expert "essentially admitted that he did in fact rely on published raw numbers, which pertained not to the specific DOT code identified jobs at issue but rather to *groups of jobs* of differing skill and exertional levels that happened to contain the three specific jobs[,]" as a result of which his testimony could not "constitute substantial evidence that the three specific jobs at issue existed in significant numbers in the national economy") (quoting *Clark v. Astrue*, Civil No. 09-390-P-H, 2010 WL 2924237, at *3 (D. Me. July 19, 2010) (rec. dec., *aff'd* Aug. 9, 2010) (emphasis in original).

However, as counsel for the commissioner contended at oral argument, *St. Pierre* and *Clark* are distinguishable in that, in those cases, vocational experts identified a significantly lower total number of jobs. In this case, the vocational expert identified three DOT-coded jobs that were part of job groups representing 2,775,790 jobs nationally. *See* Record at 35-36. By contrast, in *St. Pierre*, the vocational expert identified three DOT-coded jobs that were part of job groups representing 431,378 jobs nationally, *see St. Pierre*, 2010 WL 5465635, at *2, and in *Clark*, the vocational expert identified three DOT-coded jobs that were part of job groups representing approximately 540,000 jobs nationally, *see Clark*, 2010 WL 2924237, at *2.[3]

The commissioner persuasively reasons that, despite the identification of numbers for groups of jobs rather than individual DOT-coded jobs, there are circumstances in which an

---

[3] At oral argument, counsel for the commissioner confirmed that the commissioner did not ask the court to abandon the rationale of *St. Pierre* and *Clark*.

administrative law judge reasonably can infer that the jobs at issue exist in significant numbers in the national economy. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 14) at 17.

She notes that, in *Guiton v. Colvin*, 546 Fed. Appx. 137, 142 (4th Cir. 2013), the United States Court of Appeals for the Fourth Circuit rejected a challenge to reliance on a vocational expert's testimony that three DOT-coded jobs existed in numbers of 26,330 jobs in North Carolina and 825,000 nationally, when the expert admitted that the numbers were for groups of jobs containing the three jobs. *See id.*; *Guiton*, 546 Fed. Appx. at 141-43. The court explained:

> Even assuming these numbers were overinclusive, far smaller figures would still suffice to satisfy the Commissioner's burden. We hold that the job numbers the VE [vocational expert] provided, although perhaps somewhat imprecise, were sufficiently reliable to support the ALJ's [administrative law judge's] conclusion.

*Id.* at 142-43 (citation omitted).

She posits that that is certainly the case here, in which the vocational expert identified in excess of 2.7 million jobs nationally, and this court has held that as few as 11,000 jobs nationwide constitute a "significant" number. *See* Opposition at 16-18; *Vining v. Astrue*, 720 F. Supp.2d 126, 136 (D. Me. July 1, 2010).

As the commissioner observes, *see* Opposition at 17, Magistrate Judge Kravchuk reached a similar conclusion in *Veach v. Commissioner, Soc. Sec. Admin.*, Civil No. 1:13-CV-76-DBH, 2014 WL 35362, at *2 n.1 (D. Me. Jan. 6, 2014), in which she stated:

> Counsel did not articulate why he abandoned the argument [that the administrative law judge relied on insubstantial evidence from the vocational expert concerning the number of available jobs]. However, I suspect it is because one of the occupations identified by the vocational expert was "cashier II." Even if the Occupational Employment Quarterly (OEQ), which the VE relied on for her job numbers, is not specifically calibrated to the Dictionary of Occupational Titles job classifications, it is a tough sell to assert that the cashier II occupation does not exist in significant numbers, especially when the OEQ figure provided by the VE exceeds five thousand jobs regionally and one million jobs nationally. On this

>evidence, a reasonable person would not question the assertion that cashier II jobs exist in significant numbers, notwithstanding the VE's concession that the numbers she provided are not precise.

*Veach*, 2014 WL 35362 at *2 & n.1.

While this observation was *dictum* and did not address *Clark* and *St. Pierre*, counsel for the commissioner pointed out at oral argument that, since the filing of the Opposition, Magistrate Judge Nivison has embraced an argument essentially identical to the one advanced here, declining to reverse and remand a case in which a vocational expert admitted that she gave numbers for groups of jobs, rather than the three DOT-coded jobs at issue, when those groups represented 2,832,660 jobs nationally. *See Webster v. Colvin*, No. 1:14-cv-00213-JCN, 2015 WL 1186375, at *3-*4 (D. Me. Mar. 16, 2015).

Magistrate Judge Nivison held that "[t]he significant number of jobs in the three categories and the vocational expert's testimony that the jobs in the three occupational titles (order clerk, ticket counter, and telephone quotation clerk) would accommodate the sit/stand option [required by the claimant] constitute substantial evidence in support of the ALJ's inferential finding that jobs exist in substantial number[s] in the national economy." *Id.* at *4 (footnote omitted).[4]  He noted that smaller overall numbers were at issue in *Clark* and *St. Pierre*, although it was not clear how many individual jobs were encompassed within the job groups at issue in those cases. *See id*. at *4 n.4.

At oral argument, the plaintiff's counsel sought to distinguish *Veach* on the basis that the job of cashier II is one of the most populous listed in the DOT, while the job groups in this case contain quite a few more exertional and skill levels.  However, he could cite no details, apart from noting that the vocational expert had testified that there were 14 jobs in the group encompassing

---

[4] In similar vein, the vocational expert in this case testified that a person with all of the limitations ultimately adopted by the administrative law judge could perform the three jobs at issue. *See* Finding 4, Record at 76-77; *id*. at 34-36.

6

folding machine operators, nine in the group encompassing cleaners, and 38 in the group encompassing markers (a total of 61 separate jobs). As counsel for the commissioner pointed out at oral argument, this still represents an average of 45,505 jobs per DOT-coded job. Even granting that there are greater or smaller numbers per individual DOT-coded job, one can reasonably infer that the three jobs, collectively, exist in significant numbers in the national economy. *See also Webster*, 2015 WL 1186375, at *4 (in circumstances in which numbers given by vocational expert for three DOT-coded jobs actually encompassed 52 jobs, "[g]iven the overwhelming categorical number of jobs available [totaling more than 2.8 million], unless the sit/stand option reduces significantly the number of available jobs, the Court could not conclude that the ALJ's determination that a significant number of jobs exist in the three occupational titles to satisfy Defendant's burden at step 5 was unreasonable").

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 28th day of June, 2015.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge